SEEMER

*v.*

SEEMER.

*(Supreme Court of Appeals of Virginia, Jan. 23, 1879.)*

**Sale of Land—Case at Bar.**

In 1856, Jacqueline M. Seemer bought from Joseph Seemer, the executor of Wm. Seemer, a certain house and lot in the city of Winchester agreeing to pay $1,800.00 for it; there was no deed given for it nor was there any writing evidencing the sale, but $436.95 of the purchase price was paid, and the purchaser was put in possession. Jacqueline Seemer and Joseph Seemer, the executor, were sons and devisees of the said Wm. Seemer. In 1858, Joseph Seemer, the executor, instituted suit to have the estate of his father settled up, making Jacqueline M. Seemer and others parties to the suit. The cause was referred to a commissioner, who reported among other things, that there was a sale to Jacqueline Seemer, which was probably a parol sale. Jacqueline Seemer did not answer this bill until 1874, and in his answer he alleged that by agreement of the parties, the property should be paid for out of his distributive share in the estate of the testator, and not otherwise. There was a rule awarded against Jacqueline M. Seemer to show cause why this house and lot should not be sold for the purchase price: *held*:

**Same—Specific Performance.**

1. That the sale to Jacqueline Seemer was not a conditional sale, and that even though by parol, it was such a sale as a court of equity would enforce, there being part performance on the part of the purchaser.

**Same—Same—Failure of Purchaser to Pay—Rule to Show Cause.**

2. That it was proper to proceed against the purchaser by a rule in the cause for specific performance of his alleged contract of purchase.

The facts are more fully stated in the opinion.

Appeal from circuit court of Frederick county.

*Dandridge & Pendleton,* for appellees.

MONCURE, J., delivered the opinion of the court.

The court is of opinion that the appellant, Jacqueline M. Seemer, on or before the 1st day of January, 1856, purchased of his brother, Joseph D. Seemer, executor of their father, William Seemer, deceased, a house and lot on Water street in Winchester, at the price of eighteen hundred dollars, with interest from that day, until payment; that the said purchaser received possession, as such, of the said house and lot, from the said executor, on that day; and he, and those who claim under him, have ever since remained and continued in the uninterrupted possession, use and enjoyment of the said house and lot, under and by virtue of the said purchase; that he has paid a portion of the said price, but a large portion thereof with interest yet remains due and unpaid; that he has never received any deed for said house and lot, as such purchaser; and that though the said purchase may have been by a parol and not a written contract, yet the said contract ought to be completely performed, and the specific performance thereof ought to be enforced by a court of equity.

In September, 1858, the said Joseph D. Seemer, executor of William Seemer, deceased, exhibited his bill in equity in the circuit court of Frederick county, charging in substance among other things, that the testator died in January, 1853, leaving a will, which, on the 31st day of the same month, was admitted to probate in the county court of the said county, of which will an office copy is filed with the bill, and leaving a considerable estate, real and personal; and that the complainant qualified as sole executor, being the only one named in the will. The complainant after stating

substantially the specific devises and bequests, of the will, proceeds, in substance, to make the following, among other, statements :   The next clause is residuary and directs the division of any clear excess of his means equally among his children, except Joseph D. and Washington W. (to whom he had before made large specific devises and bequests). The final clause in the will, after naming your orator as executor, contains the following sentence :   "As my stock and debts due me, at any time, will more than pay my debts, it is my will and wish that he (meaning your orator) will continue my present business (skin dressing and glove making) in the name of the estate for at least three years, applying the proceeds of the business, with the rents and interest, etc., to the payment of all my debts and liabilities, etc., and also that all may be saved that can be for my children by having time to settle it properly." And it is then added, "All or any of my property (various houses and lots) in Winchester may be sold, if it can be sold to advantage, at any time during the three years.   Joseph D. and Washington W. shall receive a fair compensation for continuing my business in attending to it as they have done heretofore." The complainant then, after stating of what the estate consisted, proceeds thus :   "But the debts and liabilities of the estate were considerable.   Your orator proceeded with diligence and prudence to carry out the provisions of the will, and the settlement of his accounts made by Commissioner Clark in 1857, and again in 1858, will show his proceedings and progress up to those periods. The debts were scattered, many of them small and difficult to collect ; the sales of the houses and lots in Winchester were partially effected from time to time, but not without difficulty, and Commissioner Bent, with whom your orator left his papers in due time, being about to surrender his office, delayed the settlement without any fault on the part of your orator, whose constant and diligent attention during all the

time to the duties of his office will be apparent on examining the lists of receipts and disbursements as stated by the commissioner. The Winchester property being dull sale, and being disposed of from time to time, as opportunity offered, so much of it as was bought by strangers has given the executor but little trouble, but portions of it have been bought in by members of the family, who withhold payment and refuse or delay to comply with the terms on various pretexts, and among the rest upon the ground that the estate has not been settled up so as to show how much is coming, if anything, to the residuary legatees. Another ground assumed by them is that the profits or proceeds of the business carried on as they allege in the name of the estate for three years after testator's death, have not been brought into account."

"There is such a state of feeling in the family that it would be in vain to attempt to settle their various matters, except through the court, under whose instructions one of its commissioners can adjust all the accounts. To this end he prays that" the children, devisees and legatees of said Wm. Seemer, deceased, all of whom are named in the bill, and are very numerous, including the appellee, Jacqueline M. Seemer, a son of the testator, may be made defendants to the bill and severally answer the same; "that all matters of account arising out of the facts recited in the bill be referred to a commissioner for settlement; that all matters of construction, or otherwise proper for the decision of the court may be so decided; that a full, satisfactory and final adjustment and distribution of the whole estate may be made, and all proper relief given in the premises."

The copy, brought up to this court, of the record of the case is very imperfect, being only of such portions of it as the parties respectively seem to have considered material to the controversy before this court. The parties, no doubt, were all duly and promptly served with process, including

the defendant, Jacqueline M. Seemer, none of whom seem to have filed any answer except the said Jacqueline, who did not file any answer until late in 1874, though the bill had been filed as early as September rules, 1858, sixteen years before, and though many proceedings had been had in the case before a commissioner, some of which were concerning the purchase of the house and lot in Winchester, which had been made by said Jacqueline M., of the executor on the 1st day of January, 1856, as aforesaid, the said Jacqueline M. having been duly notified of such proceedings and present on the occasion of such of them as immediately concerned him, and especially such as related to his purchase aforesaid.

In the said imperfect copy of the record, the following proceedings in the case appear :

"Seemer v. Seemer.    Extract from decree of June, 1872.

"It is further ordered that a rule be awarded, returnable to the next term of this court, against Jacqueline M. Seemer to show cause, if any he can, why the house and lot which was sold to him by the said Joseph D. Seemer, shall not be resold for the purpose of paying the said balance of purchase money due from him, and in the meantime the report of Commissioners Clark and Huck, are recommitted to one of the commissioners in chancery of this court, to take proofs of any credits which may be due to the said Jacqueline M. Seemer on account of rents or otherwise against the said balance of $927.75, with instructions to said commissioners to report upon this subject, in time for the action of the court upon the return of said rule.

"Extract from report of Commissioner Huck of June, 1872.

"The facts connected with the alleged sale of the house and lot mentioned to the defendant, Jacqueline Seemer, and the true status of said property.

"The commissioner can find no report of this sale in the

papers of the cause, or any reference to it in any of the decrees. *It was probably a parol sale.* But in the report returned by Master Commissioner Clark, in September, 1860, the sale is expressly recognized and the purchase money charged against the purchaser in the distribution account. No exceptions have ever been made to said report. Said charge is thus made, viz.:

1856, Jan'y 1st.   To purchase of house. $1,800 00
Int. to June 1, '59....................... 369 00
Total, June 1, '59....................... $2,169 00
(See page 9 of said report).

"On page 13 of said report the sale is thus described under the head of 'statement of sale':

"The house and lot on Water Street, opposite the Medical College, sold to Jacqueline M. Seemer, total consideration...... $1,800 00
(Interest from January 1st, 1856—See page 13.)

"But no deed appears to have been given to the said Jacqueline by the executor, but the said Jacqueline by deed of record in the clerk's office of the corporation court of Winchester, conveyed on the 21st of May, 1857, to his brother, Wm. Seemer, his entire interest in the real and personal estate of his father, Wm. Seemer, deceased.

"The said Wm. Seemer, by deed recorded in the same office, reconveyed the said interest, including expressly the said house and lot to the said Jacqueline, on the 23rd of July, 1858, reciting that no valuable consideration passed for the first deed, but that it was made for convenience.

"The executor is no where charged by the commissioner who settled his account with rents collected on this property since the date of the said alleged sale. The will gives the executor the following power of sale: 'All or any of my

property in Winchester may be sold, if it can be sold to advantage at any time during three years.' The will was admitted to probate January 31, 1853. *There is no order entered in this cause expressly recognizing this sale.*

"In the order of reference entered at the November term, 1858, the chancery commissioner was directed to embrace in his report 'the several sales of real estate made in pursuance of the will' noticing the state of account between the executor and several distributees, some of whom it is said made purchases of portions of the property.

"Under the said order, the report of Master Commissioner Clark of September, 1860, was returned.

"An order was made November 7, 1860, recommitting the said report, to which, however, no exceptions had been made, to the same commissioner, and no report has since been returned.

"It appears from the testimony that during the year 1856 and 1857, the property was rented to E. C. Breedin, and that the rent on the same for those years, amounting to $90.00 per year, was paid to Joseph D. Seemer. On the 1st of January, 1858, Jacqueline took possession of the house himself, and has ever since rented it out or occupied it. It appears, however, that during the years 1856 and 1857, Joseph D. Seemer professed to act as the agent of Jacqueline with reference to this property. As to the status of the said property, the commissioner finds that the said sale was made by the late executor to the said Jacqueline and recommended such order as may be necessary to effectuate it and secure the payment of the unpaid purchase money ; and that in any event, if possible, it should be realized, either for the payment or for the security of the unpaid legacies, or of the balance due by the said executor to the several legatees.

"Extract from decree of December, 1872.

"And it appearing that the spa. having been duly executed

for more than two months upon James Cather, Washington W. Seemer, Samuel R. Atwell, Frederick W. Kohlhousen and Casper Nott (the sureties of said executor, and who had died pending the suit), who by a former order made in these causes were ordered to be made defendants in this cause, these causes are set for hearing as to them.

. "Seemer v. Seemer. Extract from decree, October, 1874.

"And it further appearing that the rule ordered in these causes, at the June term, 1872, to issue against the said Jacqueline M. Seemer, has never been executed. It is further a., o. and d., that said rule do now issue returnable to the next term of this court."

After the said decree of October, 1874, the said Jacqueline M. Seemer, for the first time, filed his answer to the said bill, which had been filed more than sixteen years before, and after all the decrees and proceedings aforesaid had been had in the cause, and many years after the death of the said executor. The said answer was not only to the said bill, but also to another bill filed against him and others in the same suit by Morgan M. Seemer, in his own right and as administrator d. b. n. c. t. a. of Wm. Seemer, deceased, and also to a "rule heretofore awarded against him in the above-named cause, to show cause why the house and lot which was sold to him by the said Joseph D. Seemer, should not be resold for the purpose of paying the said balance of purchase money due from him." The substance of said answer is as follows :

"To each of said bills the defendant demurs for want of equity on their face.

"For answer to said bills and also to said rule, defendant says that more than twenty-four years ago Joseph D. Seemer qualified as executor of Wm. Seemer, deceased, and the five persons named in the decree of November, 1872, be-

came sureties on his official bond. In September, 1858, the bill was filed by Joseph D. Seemer, executor, for the construction of the will of the testator.

"Respondent well understood that with the determination by the court of the construction of the will, all controversy between the parties would be ended, and nothing would remain to be done but collect the assets and distribute them. He was content to leave the question of construction to the court, and hence he did not appear and answer the bill.

"Respondent denies that he ever became the absolute purchaser of the house and lot on Water street, and denies that any lawful evidence of such alleged fact ever existed.

"He avers the fact to be that by an express arrangement *between the parties in interest*, it was agreed that the real estate in Winchester might be taken by such of the children as desired it, at a proper value to be paid for only out of the distributive share of such child in the estate of the testator. It was further arranged that the highest sum that any child should be willing to give should be the value of the property. Under this agreement respondent agreed to give for the property $1,800.00, *payable out of the distributive share of the estate, and not otherwise.*

"Upon this understanding the matter rested.

"Respondent did not take possession of the property at all at that time. The executor continued to rent out the property and receive the rent, and not until the year 1868, did respondent take possession of the property, and it was then only to preserve it from utter decay. It is true that in the report of Commissioner Clark of September, 1860, respondent is treated as a purchaser of the property and as an apparent debtor to the estate for $1,800.00 purchase money, or rather the executor is treated there as having *actually received the purchase money* from your respondent, but it is shown that this is but a convenient mode of stating his account,

adopted by the executor under a full knowledge of the real character of the transaction, but under the confident belief that he would reimburse himself the full amount of the purchase money out of the share of respondent that would come into his hands.

"Commissioner Huck, in his report of 29th of October, 1872, page 16, suggests that the questions arising out of this transaction should be settled.

"And in his report of May, 1872, page 11, that commissioner reports what he is pleased to call the *facts* connected with the alleged sale. Which 'facts' are that no report of the alleged sale exists, but that Commissioner Clark has reported it as a sale, and as respondent did at one time have possession of it, it was a sale that bound respondent at all events.

"Respondent further adverts to the fact that no report of this alleged sale has ever been made or confirmed by the court. And further, that as the alleged sale was not made under proceedings had in court, *respondent is not amenable to the rule awarded against him here, and he pleads this in bar of this proceeding.*

"Respondent is entirely willing to purchase the property upon the terms originally proposed. He is not willing to bear the entire consequence of the great delay and interruption in this cause occasioned by the war, death of parties, etc., etc.

"He is willing to take the property for his interest in the estate, otherwise he insists that his proper distributive share shall be paid to him."

The following statement follows the said answer in the record:

"Matters appearing in the record touching this alleged sale, which are herein inserted by agreement, to wit:

"By the decree of November term, 1858, Commissioner

Clark was directed to report all sales made by the executor to any of the distributees, and the status of the accounts between him and each distributee. Process returned with the commissioner's report shows that Jacqueline M. Seemer, was personally served with notice of the time and place when and where the commissioner would execute the order, to wit: At his office, January 24th, 1859. In his report returned September 25th, 1860, Commissioner Clark says that he made a full investigation of all matters between the executor and the distributees in their presence. And he also in said report, reports J. M. Seemer as the purchaser of this property. The purchase was reported to have been made by him January 1st, 1856; several reports in the cause were made, but were not confirmed by the court (except the report of June, 1872), as to any matter embraced therein, and they reaffirmed this fact. The court adopts the report as to him, and after decreeing the amount of his indebtedness, directs the rule to issue. The executor had been charged with the amount of this sale; he died about the beginning of the war, and his sureties were made parties at the November term, 1873, and required to pay the distributees of the estate the amount of this unpaid purchase money, the executor having failed to pay it over.

"At the June term, 1874, the general receiver was ordered to pay the amount of Jacqueline's interest, then in his hands, on an execution that was ordered to issue against the sureties. At the November term, 1874, the general receiver was again ordered to pay a further amount in his hands, belonging to Jacqueline, to the attorney for these sureties, they having paid the amount due by him. These are the sums with which he is credited in the decree complained of. (Signed by) Holmes Conrad and Dandridge & Pendleton" (counsel for the parties).

On the 24th of November, 1877, the two causes of Wm. Seemer's executor v. Wm. Seemer's heirs and Wm. Seemer's

heirs v. Joseph D. Seemer's heirs came on again to be heard, when the court being of opinion that Jacqueline M. Seemer was the purchaser of the house and lot on Water street, Winchester, belonging to the estate of Wm. Seemer, deceased, and is yet liable for the purchase money therefor, and that the rule awarded against him in this cause is the proper mode of proceeding; decreed that unless the said Jacqueline M. Seemer should within sixty days from the rising of the court pay over to the general receiver of the court, the sum of $927.75, with interest thereon from the first day of June, 1859, until paid; that being the amount ascertained in this cause to be due from said Seemer as purchaser of said property, to be credited, however, by the sum of $305.36, September 4th, 1874, and by $131.59 as of December 23, 1874, it shall be the duty of Holmes Conrad and E. P. Dandridge, who were appointed special commissioners for the purpose, to offer the said property at public sale in the manner and on the terms prescribed by the decree.

The said Jacqueline M. Seemer applied to a judge of this court for an appeal from, and supersedeas to, the said decree, which was accordingly allowed and awarded, the grounds of error assigned in the petition therefor being, first, that it was not proper to proceed against him by a rule in said causes for the specific performance of his alleged contract of purchase; and second, that there was no such contract proven here as a court of equity could enforce. If it existed at all, it was only parol, and the only terms shown, are those admitted in the answer. And the great loss from depreciation and decay occasioned by the lapse of more than twenty years, makes the enforcement of such contract now, harsh and inequitable.

We think that the facts set forth in the opinion we have expressed, and on which it is founded, are conclusively shown by the record and proceedings hereinbefore set forth, and

that the conclusion to which we have come upon these facts, properly results therefrom, to wit: that though the said purchase may have been by a parol and not a written contract, yet the said contract ought to be completely performed, and the specific performance thereof ought to be enforced by a court of equity. In other words, if a suit for specific performance of the contract had been brought by Joseph Seemer, executor of Wm. Seemer, against Jacqueline M. Seemer, and the facts proved in such suit have been as stated in the said opinion, there would certainly have been a decree in such suit for such specific performance. Though there was no written contract according to the Statute of Frauds, yet it would have been a clear case of part performance, and would have been thus taken out of the operation of the said statute. About this there can be no room for doubt or question, and we do not understand that there is any. The only ground of controversy on this hand of the subject is a question of fact; whether the contract of purchase was an unconditional contract at the price of $1,800.00 as claimed by appellees, or a conditional contract, at the price of $1,800.00, payable out of the appellant's distributive share of his father's estate, and not otherwise, as claimed in the answer of the appellant. If the former was the fact, then clearly the case would have been a proper one for a decree for specific performance in a suit in equity brought for that purpose, on an unconditional contract of purchase. But if the latter was the fact, then clearly the contrary would have been the case.

Now we think the weight of the evidence decidely is in favor of the appellee's version of the contract, and against that of the appellant; in other words, that the purchase was an unconditional one, at the price of $1,800.00, and not a conditional one, at the price payable out of the purchaser's distributive share of his father's estate, and not otherwise. Such a contract as the latter, would have been an exceedingly unwise, as well as an unauthorized contract for a fiduciary

to make ; and the strongest evidence of intention on his part to make such a contract ought to be required to warrant the conclusion that such an intention existed.    There is certainly no such evidence,  nor indeed any evidence,  of such an intention in this case.    The first intimation we have of it in this case, is in the answer of the appellant, not filed until late in 1874; the suit having been brought more than sixteen years before, to wit, at September rules, 1858.    Very soon after the suit was brought,  to wit, at November term,  1858, Commissioner Clark was directed to report all sales made by the executor to any of the distributees, and the status of the accounts between him and each distributee.    Jacqueline M. Seemer  was personally served  with notice of  the time and place, when and where the commissioner would execute the order.    The said commissioner says in his report that he made a full investigation of all matters between the executor and the distributees in their presence.    And he also in said report reports J. M. Seemer as the purchaser of this property. The purchase was reported  to have been made  by him, January 1st, 1856.    No exception was  ever taken by  J. M. Seemer, to this or any other report.    No pretension was ever made, that the sale was conditional until his answer was filed in 1874.    A report charging the amount of this sale, $1,800.00 and interest,  to the purchaser and to the executor,  was confirmed by the court in 1872.    The executor had been charged with the amount of this sale ; he died about the beginning of the war,  and his  sureties were  made parties in November, 1873, and required to pay to the distributees of the estate the amount of this unpaid purchase money,  the executor having failed to pay it over.    After all these things were done, and twelve or thirteen years after the death of the  executor, the appellant, for the first time,  set up this most extraordinary pretension of  a *conditional*  purchase  by  him,  which is in conflict with all the circumstances  and  probabilities of the case.

1 Va Dec—11

We therefore reaffirm the opinion we have before expressed, that the contract proved in this case is a contract as ought to be enforced by a court of equity in a suit for specific performance.

2. The court is further of opinion that it was proper to proceed against the appellant by a rule in the said cause for the specific performance of his alleged contract of purchase ; or, rather, it was proper, by decree in this case, to compel the appellant to account for and pay the purchase money due by him, with or without a rule, and there was no necessity to resort to a rule for that purpose. A rule is a proper mode of proceeding against a purchaser at a judicial sale. It is the means of making such a purchaser a party to the suit, and subject as such to the future decrees of the court in the case affecting his purchase.

The testator died in January, 1853, leaving a large real estate consisting chiefly of houses and lots in Winchester, providing, by his will, for the continuance of his business of skin dressing and glove making, which he had carried on before his death by the aid of two of his sons, for at least three years after his death, by means of the same agency ; applying the proceeds of the business, with the rents and interest, and to the payment of all his debts and liabilities, etc.; and the will then contained a clause in these words : "All or any of my property in Winchester may be sold, if it can be sold to advantage, at any time during the three years." The executor qualified as such in January, 1853, and proceeded to continue the business of the testator as provided by the will, and to make sale of his Winchester property as therein directed ; selling some of it to strangers and other portions of it to the devisees respectively or some of them, including the house and lot sold to the appellant. The devisees who were purchasers seem to have been slow in paying the purchase money, wishing, no doubt, first to ascertain what

would be their distributive share of the estate, and to have it applied to their credit on account of said purchase money. It thus happened, that after more than five years had elapsed since the qualification of the executor, without his being able to collect what was due the estate, especially by the devisees who were purchasers, and settle his accounts as executor, he filed the bill in this case in September, 1858, against the children, devisees and legatees of the testator. He therein prayed "that all matters of account arising out of the facts therein recited be referred to a commissioner for settlement, and that all matters of construction, or otherwise proper for the decision of the court, may be so decided, that a full, satisfactory and final ajustment and distribution of the whole estate may be made and all proper relief given in the premises." The executor did not state in his bill the particular sales which he had made to devisees, no doubt because there was no dispute about such sales, and the particulars thereof were already well known to the parties concerned. It was expected that an account would be taken by a commissioner between the executor and each of the devisees, in which they would be charged with any purchase money due by them, and credited with their distributive portions of the estate ; thus treating the said purchase money, to the extent of the said portions as so much received on account or in full of said portions. In this obvious view all these purchases by devisees were matters of account for settlement in this suit, and were proper subjects for such settlement without being specially named in the bill. This was the understanding of all the parties. By the decree of November term, 1858, made just two months after the bill was filed, Commissioner Clark was directed to report all sales made by the executor to any of the distributees and the status of the account between him and each distributee. Such an account was accordingly taken, on notice to, and in the presence of all the parties concerned, the balance due on such account ascer-

tained, including the account with Jacqueline M. Seemer, a report was made of such account to the court, there was no exception to the same by said Jacqueline M., and it was afterwards confirmed by the court.

We therefore think that it was just as competent for the court in this case to decree a specific execution of the said contract of purchase on the part of said Jacqueline M. Seemer, as it would have been for a court of chancery to have done so in a suit brought therein for that special purpose. And in fact, that instead of bringing separate suits for specific execution in each case, it was more convenient and for the benefit of all parties to have the whole matter settled in one suit, as all parties were interested in the whole. There was no necessity for a rule in the case, as all the parties concerned were before the commissioner when the account was settled, and understood the whole matter, which was transacted in their presence. If a rule were necessary, however, two rules were entered in the case—and if no rule was necessary, the entry of one could do no harm and would merely be a work of supererogation. Of course property ought not to be decreed to be sold in such a case without affording the purchaser an opportunity to prevent such sale by payment of the purchase money due thereon. Such an opportunity *was* afforded to the purchaser in this case, the sale being decreed to be made "unless the said Jacqueline M. Seemer, or some one for him do, within sixty days from the rising of the court, pay over" to the general receiver of the court the balance due from said Seemer as purchaser of said property.

The court is therefore of opinion that there is no error in the decree appealed from, and that the same ought to be affirmed.